*This opinion is subject to revision before final publication in the Pacific Reporter*
**2017 UT 51**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

CAROLE MARZIALE and JAMES MARZIALE,
*Respondents,*

*v.*

SPANISH FORK CITY,
*Petitioner.*

No. 20160696
Filed August 22, 2017

On Certiorari to the Utah Court of Appeals

Fourth District, Provo
The Honorable Darold J. McDade
No. 130401364

Attorneys:

Mark T. Flickinger, Provo, for respondents

John M. Zidow, S. Spencer Brown, Salt Lake City, for petitioner

JUSTICE HIMONAS authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE DURHAM, and JUSTICE PEARCE joined.

JUSTICE HIMONAS, opinion of the Court:

### INTRODUCTION

¶ 1   This appeal requires us to decide whether a credit card error that caused Carole and James Marziale's complaint against Spanish Fork City (the City) to be rejected means that their complaint and the attached undertaking were not timely filed. We affirm the court of appeals and hold that the payment error did not affect the timeliness of the Marziales' filing.

## BACKGROUND

¶ 2    The Marziales submitted a complaint against the City alleging that Ms. Marziale was injured from a fall at the City's sports complex on July 11, 2011. The Marziales first submitted a complaint in the Spanish Fork division of the Fourth Judicial District through the court's e-filing system at 4:10 p.m. on August 2, 2013.[1] Their complaint, however, did not include a notice of undertaking as required by the Governmental Immunity Act of Utah and was automatically rejected in a matter of seconds by the e-filing system. A printout of the "filing status" for this complaint from the Utah State Bar's "eFiling portal" stated that the system "returned a 'failure' status during the validation step" because "this court accepts only claims 20000 or less; you submitted 'unspecified.'" The Marziales contend that they did not receive this notice.

¶ 3    At 4:20 p.m. that same day, the Marziales filed the same complaint against the City, but this time with an undertaking and in the Provo division of the Fourth Judicial District. The status history of this complaint shows that it was "submitted by" counsel for the Marziales on August 2, 2013, at 4:20:08 p.m., and the status history showed both "approved" and "receipt issued" at 4:41:56 p.m. The status history also showed that a clerk manually rejected the filing at 4:41:56 p.m., setting the status to "invalid." The rejection contained the contact information for the clerk and a message that said, "A credit card error has occurred; please resubmit filing with valid credit card information for fee payment. You may want to try re-entering the credit card information, or a different credit card, before resubmitting." The Marziales state that they did not receive this notice.

_____

[1] In opposition to the City's motion for summary judgment, the Marziales submitted several affidavits detailing facts surrounding the process by which they commenced their lawsuit. The City moved to strike these affidavits, but the district court denied this motion, and we accordingly draw on these affidavits to the extent that we must in construing the record in the light most favorable to the nonmoving party. *See Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (stating that we view "the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party" (citation omitted)).

¶ 4    The statute of limitations for the Marziales' claim expired on September 6 or 7, 2013. On September 10, 2013, counsel for the Marziales was unable to locate the filings on the court's system and an employee of the law firm contacted the Fourth District Court. The Marziales state that this is when they first learned the filings had been rejected. The Marziales refiled the complaint and undertaking in the Provo division on September 10, 2013, and it was accepted with proper payment.

¶ 5    The City then filed a motion for summary judgment, arguing that the court lacked jurisdiction over the Marziales' action because the September 10 filing date was outside of the statute of limitations. The Marziales filed an opposition to the City's motion and a motion to correct the record, asking the district court to change the date of their filing from September 10, 2013 to August 2, 2013. The court granted the City summary judgment and denied the Marziales' motion, finding that the Marziales' complaint had not been filed until September 10, 2013.

¶ 6    The Marziales appealed. The Utah Court of Appeals reversed, holding that "the complaint's electronic receipt was the meaningful equivalent of its acceptance" and therefore the complaint was filed on August 2, 2013. *Marziale v. Spanish Fork City*, 2016 UT App 166, ¶ 17, 380 P.3d 40.

¶ 7    The City timely petitioned this court for certiorari, which we granted pursuant to our jurisdiction under Utah Code section 78A-3-102(3)(a).

**STANDARD OF REVIEW**

¶ 8    "On certiorari review, this court reviews the decision of the court of appeals, not the decision of the district court." *Colosimo v. Roman Catholic Bishop of Salt Lake City*, 2007 UT 25, ¶ 11, 156 P.3d 806. "Because a summary judgment presents questions of law, we accord no particular deference to the court of appeals' ruling and review it for correctness." *Ellsworth Paulsen Constr. Co. v. 51-SPR-L.L.C.*, 2008 UT 28, ¶ 12, 183 P.3d 248 (citation omitted). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." UTAH R. CIV. P. 56(a). We "view the facts and inferences to be drawn therefrom in the light most favorable" to the nonmoving party. *Hamblin v. City of Clearfield*, 795 P.2d 1133, 1135 (Utah 1990).

## ANALYSIS

¶ 9    The City argues that neither of the Marziales' attempts at filing their complaint on August 2, 2013, was successful. The court lacked subject matter jurisdiction over the complaint in the Spanish Fork division, the City argues, because that filing did not have an undertaking, which is a requirement under the Governmental Immunity Act. And, the City contends, the complaint filed in the Provo division was not valid because it lacked proper payment at the time of filing. We hold that the credit card error for the Marziales' filing in the Provo division did not affect the validity of their filing of the complaint. Because this means that the Marziales' lawsuit may proceed, we decline to decide whether the filing in the Spanish Fork division was valid because the question is moot.

### I. THE TIMELINESS OF THE PROVO COMPLAINT

¶ 10   The Marziales' complaint in the Provo court was rejected solely on the basis of a credit card error—the type of dishonored payment that both our rules of civil procedure and case law say does not affect the validity of the filing of a complaint.

¶ 11   We begin our analysis with the plain language of the rules at issue. *See Aequitas Enters. v. Interstate Inv. Grp.*, 2011 UT 82, ¶ 17, 267 P.3d 923. Rule 3 of the Utah Rules of Civil Procedure details the commencement of an action and states in relevant part that "[d]ishonor of a check or other form of payment does not affect the validity of the filing, but may be grounds for such sanctions as the court deems appropriate," UTAH R. CIV. P. 3(a), and that "[t]he court shall have jurisdiction from the time of filing of the complaint or service of the summons and a copy of the complaint," UTAH R. CIV. P. 3(b). Rule 5 states that "[f]iling is complete upon the earliest of acceptance by the electronic filing system, the clerk of court or the judge." UTAH R. CIV. P. 5(e). Neither rule by its plain language requires valid payment for a complaint to be filed or accepted. In fact, rule 3(a) explicitly states the opposite—that dishonor of payment does not affect whether the filing is valid.

¶ 12   Despite the clear language of rule 3, the City argues that we should read into our procedural rules a requirement that filing fees must be paid at the time a complaint is accepted for the filing to be valid. The City points to Utah's court fees statute, which

requires that "all fees shall be paid at the time the clerk accepts the pleading for filing," UTAH CODE § 78A-2-301(1)(dd), and to language added in 2008 to rule 5 tying the completion of filing to the time of "acceptance." The City argues that the use of "acceptance" in rule 5 and "accepts" in the court fees statute means that we should read the court fees statute's requirement of payment at the time of filing into rule 5.

¶ 13 We rejected a similar argument in *Dipoma v. McPhie*, holding that rule 3 does not explicitly incorporate statutes—including the precursor to the court fees statute—that require payment of fees before court employees may perform their services. 2001 UT 61, ¶¶ 10, 13 & n.5, 29 P.3d 1225 (holding that statute providing that "all fees shall be paid at the time the clerk accepts the pleading for filing" was not incorporated in rule 3 for jurisdictional purposes). We reject the City's argument that the court fees statute is incorporated in rule 5 for similar reasons. The use of "acceptance" in rule 5 and "accepts" in the court fees statute does not mean that those provisions must be read together in the way the City urges, which is to say, in a way that directly conflicts with rule 3's statement that dishonor of payment does not affect the validity of filing.

¶ 14 Rather than requiring payment at the time of filing as a matter of jurisdiction, rule 3 provides that dishonor of payment "may be grounds for such sanctions as the court deems appropriate, which may include dismissal of the action and the award of costs and attorney fees." UTAH R. CIV. P. 3(a). So while a party should pay fees "at the time the clerk accepts the pleading for filing," UTAH CODE § 78A-2-301(1)(dd), dishonor of payment results not in an invalid filing but in court-determined sanctions, which may vary from case to case, UTAH R. CIV. P. 3(a); *see also Dipoma*, 2001 UT 61, ¶ 19 (stating that where "a litigant receives notice that his or her original payment has been returned for insufficient funds, the litigant must pay the required filing fee within a reasonable time to avoid dismissal of his or her action").

¶ 15 Our holding in *Dipoma* squarely supports this conclusion. In that case, the plaintiff filed a complaint with a personal check for the amount due for the filing fee. 2001 UT 61, ¶ 2. The clerk of court accepted the check for the filing fee and stamped the plaintiff's complaint "filed." *Id.* But a little over a month later—after the statute of limitations had run—the check

was returned to the clerk of court for insufficient funds. *Id.* ¶ 3. The plaintiff eventually paid the filing fee and served the defendant, but the defendant moved for summary judgment, arguing that the complaint was not filed until the plaintiff actually paid the filing fee and therefore was barred under the statute of limitations. *Id.* ¶¶ 3–4.

¶ 16 We held that "payment of filing fees is not a jurisdictional prerequisite for the commencement of an action under rule 3 of the Utah Rules of Civil Procedure," noting that a contrary rule "could potentially lead to harsh, unintended results, especially in the case of a check returned for insufficient funds." *Id.* ¶¶ 15–16.

¶ 17 The City argues that the e-filing system's status history showing "approved" and "receipt issued" at the same time it was rejected shows that the complaint was not initially approved and stamped "filed," as was the case in *Dipoma*. But *Dipoma*'s holding was not tied to the complaint being stamped "filed" before the payment error was noticed. In *Dipoma*, the payment error, noticed after filing, did not undo the validity of the filing; here, the error was noticed before (or at the same time as, according to the e-filing status history) the clerk's rejection and cannot serve as a basis to find the filing untimely. *Dipoma*'s holding—that payment of filing fees is not a jurisdictional prerequisite to a valid filing— does not depend on when the error is discovered.

¶ 18 We therefore hold that the dishonor of the credit card payment did not affect the validity of the filing for the Provo complaint.[2]

---

[2] We need not decide at which point in time the Marziales' complaint was accepted by the court's e-filing system. The e-filing system indicates that at some point—either before or contemporaneous to the e-filing system's rejection—the Marziales' complaint was "approved." Given that the filing was approved at some point, a dishonor of payment cannot form the basis for a rejection of the filing. We pause to note, however, that we may have reached a different conclusion regarding whether a filing occurred if the City had established that the complaint had never been accepted. But it was the City's burden to demonstrate

(cont.)

## II. THE TIMELINESS OF THE PROVO UNDERTAKING

¶ 19 Because the Marziales' payment also covered their undertaking, the City's argument that the late filing deprived the district court of subject matter jurisdiction also raises the question of whether the dishonor of payment affected the validity of the undertaking.

¶ 20 We note upfront that failure to timely file an undertaking under the Governmental Immunity Act "is an affirmative defense" and not a jurisdictional issue. *Hansen v. Salt Lake Cty.*, 794 P.2d 838, 840 (Utah 1990) ("In contrast to other procedural requirements of the Governmental Immunity Act, failure to comply with [the undertaking provision] does not bar a suit.").[3] And we hold that the principle in rule 3 of the Utah Rules of Civil Procedure—that dishonor of payment does not affect the validity of the filing—extends to the payment of an undertaking under the Governmental Immunity Act.

¶ 21 Utah Code section 63G-7-601 provides that (1) actions under the Governmental Immunity Act are "governed by the Utah Rules of Civil Procedure to the extent that they are consistent" with the Act, UTAH CODE § 63G-7-601(1); and (2) an action must include an undertaking at the time of filing, *id.* § 63G-7-601(2). Nothing in rule 3 is inconsistent with the Governmental Immunity Act. We therefore must determine how

---

that no genuine issue of material fact existed as to this issue. And the City has not carried its burden.

[3] *Hansen v. Salt Lake County*, 794 P.2d 838 (Utah 1990), addressed a previous version of the Governmental Immunity Act, which stated, "At the time of filing the action the plaintiff shall file an undertaking in a sum fixed by the court, but in no case less than the sum of $300, conditioned upon payment by the plaintiff of taxable costs incurred by the governmental entity in the action if the plaintiff fails to prosecute the action or fails to recover judgment." UTAH CODE § 63-30-19 (1989). This law was repealed and replaced in 2004, but the current version contains no substantive differences. *See* UTAH CODE § 63G-7-601 (2017). Thus, *Hansen*'s principle that the provision is not jurisdictional still applies. 794 P.2d at 840.

rule 3, which governs commencement of actions, applies to filings under section 601.

¶ 22   Rule 3 explicitly applies only to complaints, which are a general requirement for civil actions. UTAH R. CIV. P. 3(a). But we believe that it is consistent with the Governmental Immunity Act to apply rule 3's principle—that dishonor of payment does not affect the validity of a filing—to an undertaking as well.

¶ 23   Indeed, incorporation of rule 3 into the Governmental Immunity Act's undertaking requirement is proper as a matter of constitutional avoidance. This canon encourages courts to "reject[] one of two plausible constructions of a statute on the ground that it would raise grave doubts as to its constitutionality," since we presume that the legislature enacts laws "in the light of constitutional limitations." *Utah Dep't of Transp. v. Carlson*, 2014 UT 24, ¶ 23, 332 P.3d 900 (citation omitted). A holding that dishonor of payment affects the validity of the filing of an undertaking could have serious due process problems if—as is alleged here—the undertaking payment has been dishonored through no fault of the plaintiff and the plaintiff has received no notice of the dishonor of payment until after the statute of limitations has run. Timely notice of rejection is key because "[t]imely and adequate notice" is part of "the very heart of procedural fairness." *Nelson v. Jacobsen*, 669 P.2d 1207, 1211 (Utah 1983); *see also Dipoma v. McPhie*, 2001 UT 61, ¶ 15, 29 P.3d 1225 ("[A] check may be returned for many reasons, some of which are beyond the ability of the payor to control—such as bank error—and a plaintiff should not have his or her action dismissed due to problems beyond their control."). The City maintains that the court sent a notice of rejection after each of the Marziales' submissions. But, as the moving party, the City bears the burden of establishing that there are no disputed facts on a material issue, and it has failed to establish undisputed facts showing that the Marziales received any such notice.[4] Thus, to avoid possible

---

[4] The City alleges that the notice of the credit card error was sent to the Marziales' service provider on August 2, 2013, but the Marziales provided evidence, by affidavit, that they did not receive notification that their payment was rejected until September 10, 2013, when an employee of their law firm contacted

(cont.)

constitutional problems stemming from a lack of notice, the better reading of section 63G-7-601 and rule 3 is that an undertaking is encompassed by the rule.

¶ 24 We emphasize that our determination today that rule 3 is not displaced by the provisions of the Governmental Immunity Act extends only to the filing of an undertaking, not to the other prerequisites to filing an action under the Governmental Immunity Act, such as a notice of claim. The Governmental Immunity Act does not generally displace all otherwise applicable law, but it is "comprehensive" and "all-encompassing" on the "matters that it regulates in comprehensive detail." *Craig v. Provo City*, 2016 UT 40, ¶ 22, 389 P.3d 423 (emphasis omitted). Thus, where portions of the Act, such as the notice of claim portion, specifically regulate an area and contain no language to support the idea that they should be supplemented, we will not import other statutory language. *Id.* ¶¶ 26, 38–40 (holding that the Governmental Immunity Act already speaks "in elaborate detail on the precise timing of the initial notice of claim and of the subsequent action to be filed in district court" and therefore a separate statute that allowed for the extension of a statute of limitations did not apply (citing UTAH CODE §§ 63G-7-402, 403)).

¶ 25 But the Governmental Immunity Act does not regulate when an action is considered filed or how payment errors affect the filing, instead incorporating by reference—and thereby deferring to—the Utah Rules of Civil Procedure. *See* UTAH CODE § 63G-7-601(1). It is therefore appropriate to apply rule 3's principle that "[d]ishonor of a check or other form of payment does not affect the validity of the filing" to the payment of an undertaking under the Governmental Immunity Act.

## CONCLUSION

¶ 26 We hold that the Marziales' credit card payment error was the equivalent of "[d]ishonor of a check or other form of payment" and therefore did not "affect the validity of the filing"

---

the Fourth District Court. And because this is on appeal from a motion for summary judgment, we view "the facts and all reasonable inferences drawn therefrom in the light most favorable" to the Marziales, who are the nonmoving party. *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation omitted).

of their complaint or undertaking in the Provo division under rule 3 of the Utah Rules of Civil Procedure. Thus, the City has not met its burden to show as a matter of law and undisputed fact that the Marziales' filing was outside of the statute of limitations. We therefore affirm the court of appeals in reversing the district court's grant of summary judgment for the City, and we remand for proceedings consistent with this opinion.

————