*This opinion is subject to revision before final publication in the Pacific Reporter*

**2019 UT 24**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

JULIE COBURN,
*Petitioner,*

*v.*

WHITAKER CONSTRUCTION CO.,
*Respondent.*

No. 20180668
Filed June 18, 2019

On Certiorari to the Utah Court of Appeals

Second District, Farmington
The Honorable Glen R. Dawson
No. 150700668

Attorneys:

James R. Hasenyager, Ogden, Stony V. Olsen, Moroni, for petitioner

Paul P. Burghardt, Ryan J. Schriever, North Salt Lake, for respondent

JUSTICE HIMONAS authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE PEARCE, and JUSTICE PETERSEN joined.

JUSTICE HIMONAS, opinion of the Court:

## INTRODUCTION

¶1 Sometimes the path we take makes all the difference. In this case, Julie Coburn chose to step over orange construction netting that was strung across a public walking trail. In doing so, her foot got caught in the netting and she fell to the ground, suffering injuries to her arm and shoulder. The district court ruled that the orange netting was an open and obvious danger and therefore Whitaker Construction—the company that strung the orange netting across the trail—owed Ms. Coburn no duty of care with respect to the netting. The court of appeals issued an order without an opinion upholding the district court's ruling. We now affirm.

## BACKGROUND

¶2　Whitaker was hired to install a water pipeline in the Kays Creek Parkway, a recreational area in Layton, Utah. The Kays Creek Parkway contains a number of walking trails that are designated for public use, one of which led to the pipeline construction site. Whitaker placed a "Trail Closed Ahead" sign at the trailhead indicating that portions of the trail were closed for construction and strung orange netting across the trail to deter people from accessing the construction site. Despite the warning sign and the orange netting, people consistently ignored the sign and would take down the orange netting, which Whitaker acknowledges it had to replace on a consistent basis.

¶3　On July 8, 2018, Ms. Coburn and her husband went for a walk in the Kays Creek Parkway. Despite seeing the "Trail Closed Ahead" sign at the trailhead, the Coburns assumed the trail was open and continued on.[1] A short distance into the trail, Ms. Coburn encountered two barrels on either side of the trail with orange netting strung between them, but the netting had fallen down and was lying across the paved trail. Ms. Coburn testified that the netting was "maybe a couple of inches" off the ground and that the width of the netting to be stepped over was about "nine inches to a foot," which was "a little bit larger" than Ms. Coburn's walking stride. She also testified that she recognized that the orange netting was a hazard but chose to step over it anyway. She tripped on the netting and fell, sustaining injuries to her arm and shoulder.

¶4　Ms. Coburn filed a negligence action against Whitaker seeking damages for her injuries. Whitaker filed a motion for summary judgment, arguing that it did not owe Ms. Coburn a duty of care under the open and obvious danger rule found in the Restatement (Second) of Torts—which we adopted in *Hale v. Beckstead*, 2005 UT 24, 116 P.3d 263—and therefore could not be held liable for her injuries. The district court agreed with Whitaker and granted its motion for summary judgment.

¶5　Ms. Coburn filed an appeal with the court of appeals, arguing that a genuine issue of material fact existed as to whether Whitaker owed her a duty under the Restatement (Second) of Torts and our opinion in *Hale*. She also argued that the court should

---

[1] There is some conflicting evidence as to whether the trail was officially open or closed at the time. Because it is irrelevant to our analysis, we need not make this determination.

abandon the open and obvious danger rule from the Restatement (Second) of Torts and replace it with a different rule from the Restatement (Third) of Torts. The court of appeals, on its own motion and pursuant to Utah Rule of Appellate Procedure 31, issued an order affirming the district court without a written opinion.[2]

¶6 Ms. Coburn filed a writ of certiorari in this court, and we granted the writ as to the following issues:

> 1. Whether the Court of Appeals erred in deciding the appeal in this case under Rule 31 of the Rules of Appellate Procedure without providing any explanation of the grounds for its decision. The Court requests that the parties address both the merits of that issue and the question of whether [Petitioner's] petition for certiorari adequately raised an argument with respect to that issue.
>
> 2. Whether the Court should reconsider its adoption of the open-and-obvious-danger rule of Sections 343 and 343A of the Restatement (Second) of Torts. The Court requests that the parties address both the merits of that issue and the question of whether Petitioner adequately preserved her arguments with respect to that issue.
>
> 3. What is the proper disposition of the case if the Court adopts a different rule?
>
> 4. If the Court declines to adopt a different rule or to reach the merits of Petitioner's request for the adoption of a different rule, whether, under relevant case law and Sections 343 and 343A of the Restatement (Second) of Torts, the Court of Appeals erred in affirming the district court's grant of summary judgment to Respondent.

---

[2] Utah Rule of Appellate Procedure 31(a) states: "After the filing of all briefs in an appeal, a party may move for an expedited decision without a written opinion. . . . The court may dispose of any qualified case under this rule upon its own motion before or after oral argument."

¶7 We exercise jurisdiction pursuant to Utah Code section 78A-3-102(3)(a).

**STANDARD OF REVIEW**

¶8 "Because a summary judgment presents questions of law, we accord no particular deference to the court of appeals' ruling and review it for correctness." *Marziale v. Spanish Fork City*, 2017 UT 51, ¶ 8, 423 P.3d 1145 (citation omitted) (internal quotation marks omitted). "Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting UTAH R. CIV. P. 56(a)).

**ANALYSIS**

I. MS. COBURN'S PETITION FOR WRIT OF CERTIORIARI DID NOT ADEQUATELY PRESERVE THE ISSUE OF WHETHER THE COURT OF APPEALS ERRED IN ISSUING AN ORDER WITHOUT OPINION PURSUANT TO RULE 31

¶9 The first issue on which we granted certiorari is "[w]hether the Court of Appeals erred in deciding the appeal in this case under Rule 31 of the Rules of Appellate Procedure without providing any explanation of the grounds for its decision." We also asked the parties to address "the question of whether [Ms. Coburn's] petition for certiorari adequately raised an argument with respect to that issue."

¶10 We conclude that Ms. Coburn's petition for writ of certiorari did not adequately raise an argument with respect to the rule 31 issue. Ms. Coburn's petition contains only two references to rule 31, neither of which demonstrates an intent to challenge the court of appeals' decision to issue its order pursuant to rule 31. Instead, the references to rule 31 in Ms. Coburn's petition simply recount the fact that the court of appeals issued an order in this case pursuant to rule 31. Nothing in her petition suggests that she takes issue with the court of appeals' invocation of rule 31. Because Ms. Coburn's petition makes no argument with respect to the propriety of the court of appeals' decision to issue an order without written opinion pursuant to rule 31, we decline to address this issue on certiorari.[3]

---

[3] We also decline to address two related issues. First, because we decline to address the rule 31 issue, we need not decide whether a party seeking to challenge the court of appeals' *sua sponte* invocation of rule 31 may have a duty to preserve that objection by first filing a

(continued . . .)

## II. MS. COBURN HAS NOT MET HER BURDEN IN PERSUADING THIS COURT TO ABANDON THE OPEN AND OBVIOUS DANGER RULE SET FORTH IN THE RESTATEMENT (SECOND) OF TORTS

¶11 The second issue on which we granted certiorari is "[w]hether the Court should reconsider its adoption of the open-and-obvious-danger rule of Sections 343 and 343A of the Restatement (Second) of Torts." Relatedly, we also asked what "the proper disposition of the case [is] if the Court adopts a different rule." We conclude that Ms. Coburn has not carried her burden in persuading us to reconsider our decision in *Hale v. Beckstead*, 2005 UT 24, 116 P.3d 263, adopting the open and obvious danger rule. Accordingly, we need not determine what the proper disposition of this case would be under a different rule.

¶12 In *Hale*, this court adopted the open and obvious danger rule as embodied in sections 343 and 343A of the Restatement (Second) of Torts. 2005 UT 24, ¶ 17. As we explained in *Hale*, the open and obvious danger rule "defines the duty of care a possessor of land owes to invitees." *Id.* ¶ 23. Specifically, the open and obvious danger rule provides that "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Id.* ¶ 9 (quoting Restatement (Second) of Torts § 343A(1)). If the open and obvious danger rule applies, then the land possessor owes no duty to its invitees with respect to the open and obvious danger and therefore cannot be held liable for any injury caused thereby.

¶13 On certiorari, Ms. Coburn argues that this court should abandon the open and obvious danger rule that we adopted in *Hale*

---

rule 35 petition for rehearing in the court of appeals before filing a petition for writ of certiorari with this court. Second, we decline to address Ms. Coburn's argument that, even though she did not make a rule 31 argument in her petition for writ of certiorari, we should reverse the court of appeals because its invocation of rule 31 constituted plain error. We have never extended the plain error doctrine to cover issues not raised in petitions for writ of certiorari. And Ms. Coburn does not present us with any briefing to suggest that such an extension would be appropriate. Accordingly, we will not so extend the plain error doctrine here.

and replace it with a different rule embodied in section 51 of the Restatement (Third) of Torts.

¶14 Overruling precedents is something that we must not do lightly. *See Neese v. Utah Bd. of Pardons & Parole*, 2017 UT 89, ¶ 57, 416 P.3d 663. As we observed in *Eldridge v. Johndrow*, there are two factors that help us determine the weight we should give our past precedents:

> (1) the persuasiveness of the authority and reasoning on which the precedent was originally based, and (2) how firmly the precedent has become established in the law since it was handed down. The second factor encompasses a variety of considerations, including the age of the precedent, how well it has worked in practice, its consistency with other legal principles, and the extent to which people's reliance on the precedent would create injustice or hardship if it were overturned.

2015 UT 21, ¶ 22, 345 P.3d 553. "We thus don't overrule our precedents unless they've proven to be unpersuasive and unworkable, create more harm than good, and haven't created reliance interests." *Neese*, 2017 UT 89, ¶ 57.

¶15 In her briefing on certiorari, Ms. Coburn makes little effort to explain how *Hale* and the open and obvious danger rule are unpersuasive and unworkable, create more harm than good, and have not created reliance interests. She argues that the open and obvious danger rule is inconsistent with Utah's comparative fault scheme because, in practice, it can bar some plaintiffs from recovering for their injuries—an argument that was rejected in *Hale*. 2005 UT 24, ¶¶ 11–31. But Ms. Coburn does not engage *Hale*'s reasoning on its merits. Nor does she explain how *Hale* is unworkable or creates more harm than good. Instead, she simply laments the fact that the open and obvious danger rule can sometimes act as an absolute bar to recovery. Ms. Coburn also argues that the open and obvious danger rule is a "highly fact dependent" inquiry and therefore it is inappropriate for judges to determine whether a danger is open and obvious. But Ms. Coburn's argument sounds more in why summary judgment may be inappropriate in some cases than why *Hale* should be overturned. Finally, Ms. Coburn argues that we should abandon the rule from the Restatement (Second) because the rule in the Restatement (Third) is different. But she does not explain how or why any change in the Restatement (Third) would affect the continuing viability of *Hale*.

The fact that the Restatement may have changed over time does not necessarily mean that an opinion adopting an earlier-in-time rule needs to be overturned. It is still incumbent upon Ms. Coburn to explain why that change necessitates the overturning of our precedent—an explanation she omits here.

¶16 Because Ms. Coburn has not carried her burden in persuading us that *Hale* should be overturned, we do not abandon the open and obvious danger rule here.[4] Concomitantly, we need not decide what the outcome of this case would be under a different rule.

### III. THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT IN WHITAKER'S FAVOR UNDER THE OPEN AND OBVIOUS DANGER RULE

¶17 Having declined to overturn *Hale* and its adoption of the open and obvious danger rule, the final question on which we granted certiorari is "whether, under relevant case law and Sections 343 and 343A of the Restatement (Second) of Torts, the Court of Appeals erred in affirming the district court's grant of summary judgment to [Whitaker]." We conclude that the court of appeals did not err in affirming the district court's grant of summary judgment and now affirm.

¶18 As detailed above, s*ee supra* ¶¶ 11–16, the operative law in this case is the open and obvious danger rule from the Restatement (Second) of Torts that we adopted in *Hale*. The Restatement provides that "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." RESTATEMENT (SECOND) OF TORTS § 343A(1) (AM. LAW. INST. 1965). Additionally, "[i]n determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated." *Id.* § 343A(2). The Restatement clarifies that there is "special reason for the possessor to anticipate harm" when the possessor "maintains

---

[4] To be clear, this is not to say that this court can never revisit *Hale* or consider adopting the approach of the Restatement (Third). Instead, we simply point out that Ms. Coburn has not carried her burden in asking us to overturn our past precedent.

land upon which the public are invited and entitled to enter as a matter of public right," as Whitaker did in this case. *Id.* § 343A cmt. g. This is so because defendants like Whitaker "may reasonably expect the public, in the course of the entry and use to which they are entitled, to proceed to encounter some known or obvious dangers which are not unduly extreme, rather than to forego the right." *Id.* However, even these defendants "may reasonably assume that members of the public will not be harmed by known or obvious dangers which are not extreme, and which any reasonable person exercising ordinary attention, perception, and intelligence could be expected to avoid." *Id.* And "[t]his is true particularly where a reasonable alternative way is open to the visitor, known or obvious to him, and safe." *Id.*

¶19 The district court held that Whitaker was entitled to summary judgment because it owed no duty of care to Ms. Coburn under the open and obvious danger rule. In the district court's view, "Whitaker had no reason to expect (or anticipate) that . . . individuals that chose to ignore the signs and the fencing . . . would be unable to protect themselves against the possibility of harming themselves when going over or around the fencing." Indeed, the district court found that there was "absolutely no evidence that Whitaker should have expected (or anticipated) that Ms. Coburn, or any other member of the public choosing to cross or go around the fencing[,] would not do so safely."

¶20 The court of appeals affirmed the district court's ruling without issuing any written opinion.

¶21 On certiorari, Ms. Coburn argues that the court of appeals erred in affirming the district court's order because the district court did not properly consider the public nature and governmental ownership of the land on which Ms. Coburn was injured in determining whether the harm Ms. Coburn suffered was foreseeable. In her estimation, the fact that the Kays Creek Parkway is a public trail is enough to satisfy the exception to the open and obvious danger rule when the land possessor "should anticipate the harm despite such knowledge or obviousness" of the danger. We disagree.

¶22 Although Ms. Coburn is correct that the Restatement provides that public land owned by the government creates a heightened level of anticipation of harm for the land possessor, this alone is not enough to satisfy the exception to the open and obvious danger rule. Instead, such land possessors "may reasonably assume that members of the public will not be harmed by known or obvious dangers which are not extreme, and which any reasonable person

exercising ordinary attention, perception, and intelligence could be expected to avoid," especially when "a reasonable alternative way is open to the visitor, known or obvious to him, and safe." *Id.* In this case, the district court properly considered whether Whitaker could reasonably assume that members of the public like Ms. Coburn could avoid the danger of the orange netting.

¶23 As the district court noted, Ms. Coburn testified in her deposition that she saw the orange netting on the ground and recognized it as a hazard. But the netting did not present an extreme danger. Ms. Coburn stated that the netting was "maybe a couple of inches" off the ground and that the width of the netting to be stepped over was about "nine inches to a foot." In other words, Ms. Coburn could have avoided the netting by simply raising her foot "a couple of inches" over a distance of about "nine inches to a foot." Tellingly, Ms. Coburn and her husband were able to safely traverse the netting on the way back to their car after Ms. Coburn's fall. The netting, then, seems the archetype of a danger that is not extreme and that a "reasonable person exercising ordinary attention, perception, and intelligence could be expected to avoid." *Id.*

¶24 Furthermore, Ms. Coburn testified that she could have walked around the netting but chose instead to walk over the netting.[5] In another part of her deposition, she stated that she had seen a footpath or some sort of worn-down trail going around the netting, indicating that other people had been walking around the netting.[6] This is consistent with the deposition testimony of a foreman for Whitaker who was responsible for maintaining the orange netting. The foreman testified that the orange netting was not put in place for the purpose of physically keeping people out. Rather, the orange netting was there to advise people not to continue

---

[5] Ms. Coburn testified that she probably would have gone around the netting if it had been higher, but chose to go over it because it was not too high and her puppy had just crossed over the netting without issue.

[6] It is unclear which path was less traveled by because "the passing there had worn them really about the same." ROBERT FROST, *The Road Not Taken*, *in* MOUNTAIN INTERVAL 9, 9 (1916).

on the trail, despite the fact that they could walk around the netting if they wanted to.[7]

¶25 In response to the testimony below that there was a safe alternative to crossing over the netting, Ms. Coburn cited the testimony of her husband, who testified that the orange netting extended some twenty to thirty feet beyond the sides of the trail. She also cited to the foreman's testimony, which indicated that the netting was attached to trees that were on either side of the trail. But the fact that the netting may have stretched beyond the width of the trail does not create a genuine issue of material fact as to whether an alternative path existed. To the contrary, the foreman's testimony demonstrates that people could still bypass the netting, even if the netting was tied to trees on the side of the path. And Ms. Coburn herself testified that the footpath or worn-down trail she saw went around the *trees*. The unrebutted testimony, then, indicates that a path around the trees—and by extension, the netting—existed at the time Ms. Coburn tripped and fell over the netting.

¶26 The testimony presented to the district court leads to two inescapable conclusions. First, the netting was not an extreme danger. Instead, it was a danger that any reasonable person could have avoided by carefully stepping over it. And second, a safe, obvious, and reasonable alternative existed to Ms. Coburn: she could have walked around the trees and avoided crossing over the netting altogether. Accordingly, Whitaker could reasonably rely on the public to avoid the danger presented by the netting through the exercise of ordinary attention, perception, and intelligence—either by going over or around it. Therefore, the district court did not err when it held that "Whitaker had no reason to expect (or anticipate) that those individuals that chose to ignore the signs and the fencing . . . would be unable to protect themselves against the possibility of harming themselves when going over or around the fencing." As such, Whitaker did not owe Ms. Coburn a duty to warn or otherwise protect her from the orange netting and the court of appeals' order upholding the district court's ruling is affirmed.

## CONCLUSION

¶27 We conclude that Ms. Coburn's petition for writ of certiorari did not adequately present an argument regarding the court of

---

[7] This is also echoed in the district court's opinion, which states that the orange netting was strung across the trail "as a visual aid" to keep people out.

appeals' rule 31 order and therefore decline to address that issue. We also conclude that Ms. Coburn has not met her burden in persuading this court to overturn *Hale* and abandon the open and obvious danger rule. Finally, we hold that, under the open and obvious danger rule, Whitaker owed Ms. Coburn no duty of care. Affirmed.

———————