**Gary RICCI, Plaintiff and Appellant,**

v.

**Charles SCHOULTZ, M.D., Defendant and Appellee.**

**No. 971189–CA.**

Court of Appeals of Utah.

July 23, 1998.

Jeffrey D. Eisenberg, Alan W. Mortensen, and Paul M. Simmons, Salt Lake City, for Plaintiff and Appellant.

Paul M. Belnap, Robert L. Janicki, and Darren K. Nelson, Salt Lake City, for Defendant and Appellee.

Before BENCH, BILLINGS and ORME, JJ.

## OPINION

BILLINGS, Judge:

Appellant Gary Ricci appeals the trail court's grant of a judgment notwithstanding the verdict (j.n.o.v.) to Dr. Charles Schoultz, dismissing Ricci's negligence claims. We affirm.

## FACTS

The parties had completely different versions of how the accident occurred. "[W]e must review the record and determine whether there is any basis in the evidence, including reasonable inferences which could be drawn therefrom, to support the jury's determination that [Schoultz] was negligent." *Braithwaite v. West Valley City Corp.*, 921 P.2d 997, 999 (Utah 1996). Thus, we recite the facts in a light most favorable to Ricci.

On April 12, 1994, Ricci and Schoultz were skiing at Snowbird Ski Resort (Snowbird) in Salt Lake County, Utah. Both parties were advanced skiers. On the sunny morning of the accident they were skiing an "easy run" that was groomed and had only a few skiers on it. Schoultz was skiing down Anderson Hill when Ricci reached the top of the run. Ricci began to ski towards the bottom and in the direction of Schoultz. Schoultz was taking a ski lesson and was making a number of small controlled turns as he descended. Schoultz and Ricci were both skiing at the same speed and in control throughout their descent. However, Schoultz slowed as he approached a small crest on the ski run and Ricci closed to within a few feet behind Schoultz. Schoultz unexpectedly lost control of his skis, and within a few seconds he fell to the left, and into Ricci, who was unable to avoid Schoultz. The two skiers slid into a tree well, with Ricci striking the tree with some force. Ricci suffered significant injuries and was eventually life-flighted to a local hospital. Schoultz was merely bruised and skied down the mountain on his own.

At trial, Ricci argued that since Schoultz's fall took place on one of the easiest runs at Snowbird under near perfect conditions, there was no possible reason for Schoultz to have fallen except for his own negligence. The jury found that Schoultz was negligent, and that his failure to ski in control was the cause of the accident. Schoultz moved for a j.n.o.v. on the grounds that Ricci failed to demonstrate that Schoultz, by falling unexpectedly in front of him, had breached any duty he owed to Ricci. The trial judge agreed: "[T]here was a duty not to be negligent. But there was no negligence on the part of defendant in this case." Thus, the trial judge granted Schoultz's j.n.o.v. motion, or alternatively granted a new trial. Ricci now appeals.

## STANDARD OF REVIEW

■ Our standard for reviewing a trial court's grant of a j.n.o.v. is strict: " 'In passing on a motion for a j.n.o.v., . . . a trial court has no latitude and must be correct.' " *Braithwaite*, 921 P.2d at 999 (quoting *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 799 (Utah 1991)). Further,

"The trial court [is] justified in granting a j.n.o.v. only if, after looking at the evidence and all of its reasonable inferences in a light most favorable to [the nonmoving party], the trial court conclude[s] that there [is] no competent evidence to support a verdict in [the nonmoving party's] favor."

*Id.* (quoting *Gold Standard, Inc. v. Getty Oil Co.*, 915 P.2d 1060, 1066 (Utah 1996)). "On appeal, we apply the same standard. In determining whether competent evidence supports the verdict, we accept as true all testimony and reasonable inferences flowing therefrom that tend to prove [the nonmoving party's] case, and we disregard all conflicts

and evidence that tend to disprove its case." *Gold Standard*, 915 P.2d at 1066 (citing *Koer v. Mayfair Mkts.*, 19 Utah 2d 339, 340, 431 P.2d 566, 568–69 (1967) (additional citation omitted)). Thus, if we determine that there was competent evidence supporting the jury's verdict, we must reverse the trial court's grant of the j.n.o.v.

## ANALYSIS

Although there is no helpful Utah authority, other state and federal courts have dealt with similar ski collision cases.

In *LaVine v. Clear Creek Skiing Corp.*, 557 F.2d 730, 735 (10th Cir.1977), the Tenth Circuit Court of Appeals affirmed the trial court's ruling that the plaintiff could not recover from defendant for injuries sustained in a mid-mountain ski collision. Similar to the case at bar, the defendant was skiing behind the plaintiff and failed to alert plaintiff of his presence before they collided. *See id.* at 735. The *LaVine* court specifically rejected the appellant's claim of negligence: "Appellant contends that the collision itself conclusively establishes the defendant's negligence and the plaintiff's right to recover. We disagree." *Id.*

More recently, in *Dillworth v. Gambardella*, 970 F.2d 1113, 1114 (2d Cir.1992), the Second Circuit Court of Appeals dealt with a similar issue: "[W]hether collisions between skiers require as a matter of law ... a finding of negligence on the part of at least one skier." In *Dillworth*, the parties had significantly different versions of the facts leading up to the mid-mountain collision, but the result was the same as this case—significant injuries to the party bringing the cause of action. *See id.* at 1114–15. The *Dillworth* court stated that

some collisions between skiers may be as a result of the obvious and necessary risks inherent in skiing, and accidents might occur despite the exercise of ordinary and reasonable care and without negligence by either skier.... Like all others, skiers owe that degree of care an ordinary prudent person would exercise under like or similar circumstances. One skier is not the insurer of another skier's safety *nor, absent negligence, is one skier liable to*

*another for inadvertent or accidental contact.* ... Thus... skiers who lose control even while exercising due care—that is, have breached *no duty owed to other skiers*—may pose a danger which is inherent, obvious and necessary to participate in the sport of skiing.

*Id.* at 1122 (citing *LaVine*, 557 F.2d at 734–35) (emphasis added) (additional citations omitted).

Cases that have supported a finding of negligence in a ski collision have required proof of some negligent conduct before the collision. For example, in *Freeman v. Hale*, 30 Cal.App.4th 1388, 36 Cal.Rptr.2d 418, 420 (1994), two skiers collided while descending a ski slope and the plaintiff suffered severe injuries as a result of the accident. In *Freeman*, however, the defendant had consumed a large quantity of alcohol, and was inebriated when the collision occurred. *See id.* 36 Cal.Rptr.2d at 420. The California Court of Appeals succinctly summarized its conclusion that a negligence regime was the proper way to analyze liability: "[W]hile Hale did not have a duty to avoid an inadvertent collision with Freeman, he did have a duty to avoid increasing the risk of such a collision." *Id.* at 423–24 (citing *Knight v. Jewett*, 3 Cal.4th 296, 11 Cal.Rptr.2d 2, 834 P.2d 696, 710–11 (1992)). The *Freeman* court concluded that alcohol consumption was not an integral aspect of skiing, and that by consuming alcohol prior to and during his skiing, defendant breached his duty to plaintiff " 'not to increase the risks to a participant over and above those inherent in the sport.' " *Id.* at 421 (quoting *Knight*, 11 Cal.Rptr.2d 2, 834 P.2d at 710).

In sum, a skier does have a duty to other skiers to ski reasonably and within control. However, an inadvertent fall on a ski slope, alone, does not constitute a breach of this duty. We conclude, after a careful review of the trial record, that Ricci failed to introduce any competent evidence that Schoultz was skiing negligently before his sudden and unexpected fall in front of Ricci. Ricci himself testified about the conditions and events just before the accident, noting that up to one second before the collision, Schoultz was skiing in control. Schoultz's

loss of control and fall, by itself, does not establish his negligence.

Ricci's evidence, including all reasonable inferences drawn from it, is simply insufficient for a jury to have concluded that Schoultz skied negligently. We conclude the trial court was correct in determining that Schoultz did not breach his duty of reasonable care to Ricci by accidentally falling into Ricci when there was no evidence that Schoultz was skiing negligently at the time of his fall. Because we agree with the trial court's ruling, we do not reach the questions of whether a new trial should have been granted or whether the trial court's decisions to exclude Schoultz's expert witness testimony were proper.

## CONCLUSION

Some collisions between skiers are an inherent risk of skiing and may occur absent negligence, as in this case. Thus, we affirm the trial court's grant of a judgment notwithstanding the verdict.

BENCH, J., concurs.

ORME, Judge (dissenting):

By focusing on the evidence plaintiff presented, rather than all evidence in the record and the reasonable inferences that can be drawn therefrom, my colleagues take a *too narrow* view of our role in reviewing a trial court's reversal of a jury's verdict. Simply stated, the question is not whether the evidence plaintiff presented supports the jury's verdict; rather, it is whether *any* evidence from whatever source will support it. *See Gold Standard, Inc. v. Getty Oil Co.,* 915 P.2d 1060, 1066 (Utah 1996) ("In determining whether competent evidence supports the verdict, we accept as true all testimony and reasonable inferences flowing therefrom that tend to prove [the nonmoving party's] case, and we disregard all conflicts and evidence that tend to disprove its case."). As the Fifth Circuit has noted,

> [o]n motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence— not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion.

*Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc), *overruled on other grounds, Gautreaux v. Scurlock Marine, Inc.,* 107 F.3d 331, 336, 339 (5th Cir.1997). *Accord Guilbeau v. W. W. Henry Co.,* 85 F.3d 1149, 1161 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 766, 136 L.Ed.2d 713 (1997); *Lamb ex rel. Shepard v. Sears, Roebuck & Co.,* 1 F.3d 1184, 1187 (11th Cir.1993); *Epoch Producing Corp. v. Killiam Shows Inc.,* 522 F.2d 737, 743 (2d Cir.1975), *cert. denied,* 424 U.S. 955, 96 S.Ct. 1429, 47 L.Ed.2d 360 (1976); *Anderson v. Lykes Pasco Packing Co.,* 503 So.2d 1269, 1271–72 (Fla.Dist.Ct.App.1986); *Millet v. Cormier,* 671 So.2d 1101, 1107–08 (La.Ct. App.), *cert. denied,* 673 So.2d 1036 (La.1996).

In this case, the jury might well have believed defendant's testimony that he was skiing in complete control until immediately before the accident, that his skis did not come apart, and that he did not fall. Rejecting defendant's testimony that he was hit from behind by plaintiff, which was essentially impossible given where the two ended up after the collision, the jury was also free to disbelieve plaintiff's recollection that defendant's skis separated and defendant merely fell into plaintiff's path. The jury could nonetheless have believed plaintiff's testimony that, immediately prior to the collision, he was skiing in control and a safe distance from defendant and defendant's apparently intended route. Mindful that plaintiff and defendant ended up in a heap well off the ski run, in a position consistent with defendant hitting into plaintiff at high speed, the jury might well have inferred that the only way the accident could have occurred was if defendant, fully in control, carelessly and precipitously turned sharply to the left, hitting the unsuspecting plaintiff, who had every reason to assume defendant was going to continue with his pattern of tight turns as plaintiff passed uneventfully on the left.

To be sure, this is not exactly the theory plaintiff developed at trial, but it is a scenario that emerges quite readily if one reviews *all* the evidence and all reasonable inferences that could be drawn therefrom in the light

most favorable to the jury's verdict. If that is what the jury concluded, then the accident was caused by defendant's negligence, not an inadvertent fall. Accordingly, the trial court should not have disturbed the jury's verdict, and we should reinstate it.