**2019 UT App 161**

## THE UTAH COURT OF APPEALS

STEPHANIE DONOVAN,
Appellant,
*v.*
DWIGHT SUTTON, JULIE SUTTON, AND S.S.,
Appellees.

Opinion
No. 20180137-CA
Filed October 3, 2019

Third District Court, Silver Summit Department
The Honorable Kent R. Holmberg
The Honorable Kara L. Pettit
No. 160500459

Michael A. Katz, Judson Dee Burton, and
W. Alexander Evans, Attorneys for Appellant

Gary T. Wight and Smith Monson, Attorneys
for Appellees

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and DIANA HAGEN
concurred.

POHLMAN, Judge:

¶1     Skiers are known to say that "if you're not falling, you're not learning." In this case, nine-year-old S.S., while learning to ski, fell and crashed into Stephanie Donovan. Donovan sued S.S. and her parents, Dwight and Julie Sutton (collectively, the Suttons) for Donovan's alleged injuries. The district court granted summary judgment in favor of the Suttons, and Donovan appeals. We affirm.

### BACKGROUND[1]

¶2 One afternoon, S.S. was learning to ski on a beginner run (aptly named "First Time") at a Utah ski resort. S.S. had taken two days of lessons one year earlier, and because S.S. was still a novice, Dwight[2] skied with S.S. on the beginner run, staying close downhill and facing her. Julie skied ahead with S.S.'s sister.

¶3 Meanwhile, Donovan, an experienced skier, stopped on the same slope to take a picture. As she faced downhill and was putting her camera away, Donovan heard, "Look out!" Donovan did not have time to move, and S.S. hit her from behind. Donovan alleged that she sustained injuries as a result.

¶4 S.S. had been skiing downhill in a wedge, going about five miles per hour. But moments before the collision, S.S. started to lose her wedge, passed by Dwight, and began to lose control about ten feet away from Donovan. S.S. leaned back, hit Donovan, and landed on top of her.

¶5 At the time of the collision, the snow was packed powder. It did not appear that the weather and snow conditions played a role in what transpired.

---

1. When reviewing a grant of summary judgment, we view the facts "in a light most favorable to the party opposing summary judgment." *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1038 (Utah 1991). We thus construe the facts in the light most favorable to Donovan. *See id.*

2. As is our practice when parties share a last name, we refer to them by their first names, with no disrespect intended by the apparent informality.

¶6     Donovan filed suit against the Suttons, asserting two causes of action. Donovan's first cause of action alleged that S.S. was negligent and sought to hold Dwight and Julie vicariously liable for S.S.'s negligence. Donovan's second cause of action alleged that Dwight and Julie were negligent in their supervision of S.S.

¶7     The Suttons moved for summary judgment, arguing that Donovan could not establish her negligence claim as a matter of law. They argued that under *Ricci v. Schoultz*, 963 P.2d 784 (Utah Ct. App. 1998), "a skier owes 'a duty to other skiers to ski reasonably and within control'" and that "'an inadvertent fall on a ski slope, alone, does not constitute a breach of this duty.'" (Quoting *id.* at 786.) They asserted that "[S.S.] could have taken no other actions to ski more cautiously" and that "[t]he solitary fact that [S.S.] lost control, as a beginner skier is prone to do, is not enough" to show negligence. They further argued that because no evidence indicated that S.S. was negligent or that S.S. was acting as her parents' agent, Dwight and Julie could not be held vicariously liable. They also asserted that Donovan's negligent supervision claim failed as a matter of law because the "undisputed facts show[ed] that Dwight and Julie's supervision of [S.S.] was reasonable and did not make it possible or probable that [she] would injure [Donovan]."

¶8     Donovan opposed the motion. She argued that S.S. breached her duty by skiing "out of control" and by "ignor[ing] instructions given by her father as to how to stop or slow down on the ski hill." She also argued that S.S. failed to yield the right of way to downhill skiers in contravention of a local ordinance and other codes of conduct. She thus asserted that the question of S.S.'s negligence was one for the jury to decide and should not be resolved as a matter of law. Donovan also conceded that Utah law would not hold Dwight and Julie vicariously liable for S.S.'s negligence. But she asserted that Dwight and Julie were nevertheless personally negligent in their supervision, training,

and instruction of S.S. More specifically, Donovan claimed that they were "aware" that S.S. "was not only inexperienced but fearful of skiing," they "should have known their child was getting tired and skiing in a sloppy fashion," Dwight's "attempts to instruct [S.S.] were feeble," and Dwight should have intervened to thwart the collision or at least warned Donovan that a crash was imminent. Donovan thus asserted that her negligent supervision claim also presented a question for the jury.

¶9      The district court granted summary judgment in favor of the Suttons. In addressing Donovan's negligence claim, the court first determined that S.S. is "not held to the same standard as an adult" under Utah law and that "the amount of care she's held to is that ordinarily used by a child of similar age, knowledge, [and] experience in similar circumstances."[3] The court next determined that, under *Ricci*, "skiers who lose control even though exercising due care" do not breach the standard of care and that "a fall on the slope alone does not constitute a breach." In other words, "an inadvertent fall on the slope, which is losing control, . . . doesn't equate to failing to use reasonable care." In contrast, to show a breach, "[t]here has to be additional evidence [apart from a fall itself] to support . . . a finding of negligence,"

---

3. On appeal, Donovan does not dispute that a child is not judged by the adult standard, but she claims that deciding whether a child acted negligently is a question of fact for the jury. Our supreme court has stated that "[t]he question of whether a child five or over is capable of negligence is reserved for the fact-finder, unless a court determines that no reasonable jury could disagree on the issue." *Nielsen ex rel. C.N. v. Bell ex rel. B.B.*, 2016 UT 14, ¶ 22, 370 P.3d 925. For the reasons discussed below, this case qualifies as one in which no reasonable jury could find S.S. negligent.

such as "going too fast for the conditions" or "not watching where [the skier is] going." Indeed, the plaintiff "must have evidence of [the defendant's] failure to use reasonable care before the sudden, unexpected fall."

¶10   Looking at the evidence submitted by the parties, the district court determined that "the only thing [it] showed . . . is that [S.S.,] as a nine-year-old beginner skier, was not able to maintain her wedge and . . . then fell" and that such conduct was "not a failure to use reasonable care" under *Ricci*. Because S.S. was "inadvertently . . . not able to maintain [her] wedge," which led her to accelerate, lean back, and ultimately collide with Donovan, the court concluded that the facts "do not state a claim for negligence . . . or failure to exercise reasonable care" by S.S. Thus, the court determined that no reasonable jury could conclude on the evidence that S.S. failed "to exercise reasonable care under the standard of a nine-year-old with her experience and her knowledge level." Additionally, based on Donovan's concession, the court concluded that Donovan had not stated a viable vicarious liability claim against Dwight and Julie.

¶11   Turning to Donovan's negligent supervision claim, the district court stated that the undisputed facts showed that S.S. "had a [ski] lesson the year before" and that Dwight had instructed her about "the wedge" and "the side ski" but that S.S. "only wanted to do the wedge because that made her go slower." The facts also showed that Dwight taught S.S. how to fall if she was losing control. No facts suggested that Dwight had time to grab S.S. before she struck Donovan. From this record, the court determined that "there's simply no evidence of failure to exercise reasonable care by the parents" and thus concluded that Donovan could not prove negligent supervision.

¶12   The court accordingly dismissed Donovan's claims. Donovan appeals.

ISSUE AND STANDARD OF REVIEW

¶13    Donovan contends that the district court erred in granting summary judgment in favor of the Suttons on her claims for negligence and negligent supervision. "Because a summary judgment presents questions of law, we accord no particular deference to" the district court's decision and review it for correctness. *Coburn v. Whitaker Constr. Co.*, 2019 UT 24, ¶ 8, 445 P.3d 446 (cleaned up). "Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* (cleaned up).

ANALYSIS

I.  Negligence Claim

¶14    Donovan challenges the district court's grant of summary judgment to the Suttons on her negligence claim. She first argues that the court "misinterpreted" *Ricci v. Schoultz*, 963 P.2d 784 (Utah Ct. App. 1998), and that "the fact-finder may ultimately conclude that the collision itself establishes S.S.'s negligence." She then argues that "even if [the district court] correctly interpreted *Ricci*, the record supplies ample evidence (other than the collision) that could convince a reasonable jury that S.S. breached a duty of care to [Donovan]." We address each argument in turn.

A.    *Ricci v. Schoultz*

¶15    Donovan contends that the district court was wrong to interpret *Ricci* "as standing for the proposition that a collision on a ski-slope [preceded] by an inadvertent fall does not, by itself, establish negligence." Donovan also asserts that *Ricci* does not stand for the proposition that "'additional evidence,' beyond the

mere fact that a collision has occurred, is required to 'support a finding of negligence.'" According to Donovan, *Ricci* instead "stands for the more limited proposition that an *inadvertent fall* (i.e., a fall that occurs due to the unexpected loss of control) and immediate subsequent collision between two skiers *in motion* does not, by itself, establish negligence." Donovan thus asserts that *Ricci* does not govern where, as here, "the collision occurred with only one skier in motion." In other words, Donovan seeks to limit *Ricci* to "the facts from which [its] holding arose."

¶16    To prevail on a claim for negligence, a plaintiff must establish "that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused (4) the plaintiff to suffer legally compensable damages." *Cope v. Utah Valley State College*, 2014 UT 53, ¶ 11, 342 P.3d 243. Generally, "we all have a duty to exercise care when engaging in affirmative conduct that creates a risk of physical harm to others." *Nixon v. Clay*, 2019 UT 32, ¶ 13 (cleaned up).

¶17    This court has previously established the duty that skiers owe to other skiers. Specifically, a skier has "a duty to other skiers to ski reasonably and within control." *Ricci v. Schoultz*, 963 P.2d 784, 786 (Utah Ct. App. 1998). The parties agree that this is the duty that applies in this case. This court has also established that "an inadvertent fall on a ski slope, alone, does not constitute a breach of this duty." *Id.*

¶18    In *Ricci*, the plaintiff and the defendant were both advanced skiers going down a groomed run at the same speed and in a controlled manner. *Id.* at 785. But the defendant slowed when "he approached a small crest on the ski run," and the plaintiff "closed to within a few feet behind" the defendant. *Id.* The defendant then "unexpectedly lost control of his skis" and fell into the plaintiff, who was unable to avoid the defendant and suffered injuries after the parties slid into a tree well after the collision. *Id.* A jury found that the defendant was negligent, but

the trial court granted the defendant judgment notwithstanding the verdict, concluding that the defendant had not breached any duty he owed the plaintiff. *Id.*

¶19 This court affirmed. *Id.* at 787. It began with the general principle that, "like all others, skiers owe that degree of care an ordinary prudent person would exercise under like or similar circumstances." *Id.* at 786 (cleaned up). The court then considered similar ski collision cases from other jurisdictions and stated that those that "have supported a finding of negligence in a ski collision have required proof of some negligent conduct before the collision." *Id.* For example, because "alcohol consumption was not an integral aspect of skiing," a defendant who consumed alcohol before and during his skiing "breached his duty to plaintiff 'not to increase the risks to a participant over and above those inherent in the sport.'" *Id.* (quoting *Freeman v. Hale*, 36 Cal. Rptr. 2d 418, 421 (Ct. App. 1994)).

¶20 Ultimately, this court determined that "[s]ome collisions between skiers are an inherent risk of skiing and may occur absent negligence."[4] *Id.* at 787. It decided that "a skier does have

---

4. After this case was briefed and argued, the Utah Supreme Court issued *Nixon v. Clay*, 2019 UT 32, in which it held that "voluntary participants in a sport cannot be held liable for injuries arising out of any contact that is 'inherent' in the sport," *id.* ¶ 21, even for sports that "anticipate only incidental or infrequent contact between co-participants," *id.* ¶ 31. Under this rule, "participants in voluntary sports activities retain a duty to use due care not to increase the risks to a participant over and above those inherent in the sport." *Id.* ¶ 21 (cleaned up). "But there is no duty to lower or eliminate risks that are inherent in an activity." *Id.* For example, though tennis "does not involve frequent bodily contact among participants," "there are obvious

(continued…)

a duty to other skiers to ski reasonably and within control" but that "an inadvertent fall on a ski slope, alone, does not constitute a breach of this duty." *Id.* at 786. Thus, on the facts presented, this court concluded that the defendant's "loss of control and fall, by itself, [did] not establish his negligence." *Id.* at 786–87. This court further concluded that the defendant "did not breach his duty of reasonable care to [the plaintiff] by accidentally falling into [the plaintiff] when there was no evidence that [the defendant] was skiing negligently at the time of his fall." *Id.* at 787.

¶21 We are bound by *Ricci. See State v. Legg*, 2018 UT 12, ¶ 9, 417 P.3d 592 (explaining that "under the doctrine of horizontal stare decisis, the first decision by a court on a particular question of law governs later decisions by the same court" and "horizontal stare decisis applies as between different panels of

---

(…continued)

risks of injurious contact," including "colliding with a teammate during a doubles match," and a tennis player involved in such a collision is not exposed to liability for making such contact. *Id.* ¶ 32. We view *Ricci v. Schoultz*, 963 P.2d 784 (Utah Ct. App. 1998), as consistent with *Nixon*.

We also observe that Utah's Inherent Risks of Skiing Act, Utah Code Ann. §§ 78B-4-401 to -404 (LexisNexis 2018), which immunizes ski area operators for injuries resulting from the inherent risks of skiing, recognizes that "certain risks are inherent" in the sport of skiing, *id.* §§ 78B-4-401, -403. It defines "inherent risks of skiing" to mean "those dangers or conditions which are an integral part of the sport" including, among other things, "collisions with other skiers" and "the failure of a skier to ski within the skier's own ability." *Id.* § 78B-4-402(1)(f), (h). These legislative statements are consistent with *Ricci*'s recognition that "[s]ome collisions between skiers are an inherent risk of skiing." 963 P.2d at 787.

the court of appeals" (cleaned up)). And we see nothing in *Ricci*'s reasoning that draws a distinction between moving and stationary skiers or limits its application to situations in which both skiers were in motion at the time of the collision.[5] Instead, *Ricci* is rooted in the fact that unexpected, inadvertent falls and contact occur while skiing "despite the exercise of ordinary and reasonable care." *Ricci*, 963 P.2d at 786 (cleaned up). Because skiers may "lose control even while exercising due care" and thereby "may pose a danger which is inherent, obvious and necessary to participate in the sport of skiing," the *Ricci* court determined that evidence of an inadvertent fall, without more, is not proof of negligence. *Id.* at 786–87 (cleaned up). And because the evidence demonstrated that the defendant in *Ricci* was "skiing in control" immediately before the collision, the plaintiff had "failed to introduce any competent evidence that [the defendant] was skiing negligently before his sudden and unexpected fall in front of [the plaintiff]." *Id.* at 786. We therefore agree with the district court's decision not to distinguish *Ricci* on the basis that this lawsuit involves only one skier who was in

---

5. Donovan asserts that *Ricci*'s recognition that additional facts are needed to show negligence, "by implication, also recognizes that where a collision is of a type that *does not typically occur* absent negligence, no additional demonstration of wrongdoing would be required" and argues that "[t]he collision itself, in such circumstances, would establish negligence." She then asserts that a reasonable jury could conclude that the type of collision that occurred here—where "one skier accelerated toward a stationary skier, losing control at the last minute"—"does not typically occur absent negligence." But this argument again points solely to the collision to show negligence, and *Ricci* plainly rejects the notion that "an inadvertent fall on a ski slope, alone," constitutes negligence. *See* 963 P.2d at 786.

motion at the time of the collision[6]—S.S.—and we agree with its interpretation of *Ricci* as requiring "evidence of [the defendant's] failure to use reasonable care before the sudden, unexpected fall."[7]

B.      *Ricci*'s Application

¶22    Donovan next contends that even if *Ricci* applies, the district court "was mistaken" to conclude that she had "not

---

6. In her reply brief, Donovan seeks to distinguish *Ricci* on the similar ground that it requires a showing that the downhill skier, not the uphill skier, lost control as a result of some negligent conduct. We do not read *Ricci* as limiting its application in this manner, and we therefore reject this argument.

7. Donovan also attempts to distinguish *Ricci* procedurally, arguing that the "trial judge [in *Ricci*] had heard all evidence placed before the trier of fact before granting [the] defendant's motion" for judgment notwithstanding the verdict but that here the "district court had not yet heard the evidence that would be adduced at trial," especially given that "expert discovery had not [yet] been conducted." According to Donovan, an "expert witness may provide important information that would help a jury determine whether S.S. was negligent." We are not persuaded. Donovan has not shown that an expert witness would provide evidence beyond the fact of S.S.'s inadvertent fall, and Donovan never argued to the district court that she needed more time for discovery in order to "present facts essential" to her opposition to the Suttons' summary judgment motion. *See generally* Utah R. Civ. P. 56(d) (providing that if a nonmoving party shows that it "cannot present facts essential to justify its opposition" to summary judgment, the court may, among other things, "defer considering the motion" or "allow time to obtain affidavits or declarations or to take discovery").

produce[d] evidence, other than the collision, showing a breach in the applicable standard of care." In particular, Donovan insists that "negligence can be inferred from evidence other than the collision," maintaining that the "record contains disputed material facts regarding S.S.'s experience and whether she had an adequate opportunity to avoid the collision." The Suttons respond that Donovan's arguments effectively still "rel[y] on the collision alone to prove [S.S.] was negligent." We agree with the Suttons.

¶23 Donovan first asserts that S.S. had "received formal and informal ski instruction that taught her how to wedge or side ski." She then asserts that the reasonable inference from this evidence is that "[t]his instruction would have also taught [S.S.] how to stop and change direction." Donovan also points to the fact that S.S. was ten feet away from her when S.S. started to lose control, stopped wedging, and accelerated, claiming that S.S. "likely had sufficient time to avoid the collision."

¶24 In considering these facts, the district court determined that it was undisputed that S.S. was a nine-year-old beginner skier on a beginner run who was skiing in a wedge at a speed of about five miles per hour. And about ten feet away from Donovan, S.S. became unable to maintain her wedge, causing her to go faster, fall, and collide with Donovan. The court concluded that under *Ricci v. Schoultz*, 963 P.2d 784 (Utah Ct. App. 1998), the fact that S.S. was not able to maintain her wedge and then fell was "not a failure to use reasonable care." We agree with this assessment. Donovan contends that a jury could reasonably conclude that S.S. did not draw upon her experience and "take appropriate evasive action to avoid the collision," but other than speculation, Donovan points to nothing in the record to support this conclusion. Donovan identifies no evidence of S.S.'s failure to use reasonable care before she fell, and she does not explain what evasive action S.S. could have or

should have reasonably taken under the circumstances.[8] In sum, Donovan has not shown that S.S.'s inability to keep her wedge and remain upright, despite having had some ski lessons, is sufficient for a jury to conclude that S.S. was negligent. *See id.* at 786–87.

¶25 Next, Donovan asserts that under *Ricci*'s duty to ski reasonably and within control, a skier is required "to avoid collision with the person below her." In support, she cites the Park City Municipal Code, which creates criminal liability for reckless skiing and states that "[t]he primary duty shall be on the skier or snowboarder to avoid collision with any person or object below him." Park City, Utah, Municipal Code § 8-2-8(B) (2008). She then argues that "violation of an ordinance is evidence of negligence" and that evidence that S.S. violated an ordinance constitutes evidence of breach "in addition to mere collision," thus creating a question for the jury under *Ricci*. But "before violation of a legislative standard will be held to be . . . prima facie evidence of negligence[], the legislative standard must first be adopted by the court as defining the standard of conduct of a reasonable person." *Colosimo v. Gateway Cmty. Church*, 2018 UT 26, ¶ 45 n.82, 424 P.3d 866 (cleaned up). In other words, "it is only after a statute or ordinance is adopted by the court as the standard of conduct of a reasonable person, thereby imposing a duty

---

8. In her reply brief, Donovan argues for the first time that S.S. breached her duty to ski reasonably by "failing to look, see or heed in a timely manner"; by not avoiding a collision with a plainly visible downhill skier; by failing to slow, stop, and change direction; and by not providing a more timely warning to Donovan. But we do not consider issues that are raised for the first time in a reply brief. *Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903. We therefore do not address these arguments further.

recognizable in tort, that a court will then determine whether a violation thereof constitutes prima facie evidence of negligence." *Id.* Donovan only cursorily grapples with this "preliminary question of whether the legislative standard imposes a duty recognizable in tort." *See id.* She has not met her burden of persuasion on this subject.

¶26 In short, Donovan has not persuaded us that there is evidence, apart from the collision itself, that S.S. skied negligently. The district court therefore correctly granted summary judgment against Donovan on her negligence claim.

## II. Negligent Supervision Claim

¶27 Donovan next challenges the district court's grant of summary judgment to Dwight and Julie on her negligent supervision claim against them. Donovan asserts that from disputed material facts, a jury could conclude that Dwight and Julie "did not properly exercise control" over S.S. where they "put a child prone to accident in an environment where she could hurt other skiers and then failed to properly monitor her activity or otherwise exercise control over her as to prevent injury."

¶28 "Summary judgment is appropriate in negligence cases only in the clearest instances." *Castellanos v. Tommy John, LLC*, 2014 UT App 48, ¶ 41, 321 P.3d 218 (cleaned up). "Bare allegations of negligence unsupported by facts, however, are insufficient to withstand a motion for summary judgment." *Id.* (cleaned up).

¶29 The parties agree that we may resolve Donovan's negligent supervision claim under the standard set forth in section 316 of the Restatement (Second) of Torts. That section states,

> A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent (a) knows or has reason to know that he has the ability to control his child, and (b) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 316 (Am. Law Inst. 1965).

¶30    The district court granted summary judgment to Dwight and Julie on this claim on the ground that "there's no evidence of failure to exercise reasonable care by the parents." The court stated the undisputed facts were that S.S. had had a ski lesson the year before and that Dwight had instructed S.S. regarding the wedge, the side ski, and how to fall. Further, the court observed that there were no facts upon which the jury could infer an obligation or ability for Dwight to grab her under the circumstances. On this record, the court determined that a reasonable jury could not conclude "that the parents failed to exercise reasonable care."

¶31    Assuming, without deciding, that section 316 is the proper standard, we agree with the district court that Donovan's negligent supervision claim fails as a matter of law. Donovan emphasizes that S.S. was a new and nervous skier. But Donovan has not shown that a reasonable jury could conclude that Dwight and Julie failed to exercise reasonable care simply because they allowed S.S., who was nervous, to learn to ski on a beginner run. Donovan also emphasizes that because it was the last run of the day, Dwight let S.S. "ski tired." No record evidence supports this allegation. Rather, it was undisputed that S.S. did not remember being tired that day and did not tell Dwight that she was tired. As a result, Donovan's allegation that Dwight and Julie

permitted S.S. to "ski tired" that day is speculative and insufficient to create a question for the jury.[9] *See Castellanos*, 2014 UT App 48, ¶ 41.

¶32     On this summary judgment record, Donovan has not set forth facts to show that Dwight and Julie breached their duty to exercise reasonable control over S.S. Accordingly, we affirm the district court's conclusion that Donovan's negligent supervision claim fails as a matter of law.

CONCLUSION

¶33     Donovan has not shown that the district court erred in interpreting and applying this court's precedent, and the district court correctly concluded that Donovan did not offer any evidence apart from the collision itself to support her negligence claim. The district court also correctly granted summary judgment against Donovan on her negligent supervision claim. Accordingly, we affirm.

——————

9. Donovan also asserts that Dwight had a duty to look and see Donovan behind him on the slope while he monitored S.S. as she skied downhill, potentially toward other skiers below. But because she raised this argument for the first time in her reply brief, we do not consider it. *See id.*