**2021 UT 58**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STEPHANIE DONOVAN,
*Petitioner*,

*v.*

DWIGHT SUTTON and S.S., a person under eighteen years of age,
*Respondents*.

No. 20190914
Heard March 8, 2021
Filed September 30, 2021

On Certiorari to the Utah Court of Appeals

Third District, Silver Summit
The Honorable Kara L. Pettit
No. 160500459

Attorneys:

Judson D. Burton, W. Alexander Evans, Murray, for petitioner

Gary T. Wight, Jeremy R. Speckhals, Salt Lake City,
for respondents

JUSTICE PETERSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PEARCE joined.

JUSTICE PETERSEN, opinion of the Court:

### INTRODUCTION

¶1 This case arose after a nine-year-old beginner skier collided with a woman on the "First Time" ski run in Park City. The woman sued the child and her parents, asserting claims for, among other things, negligence and negligent supervision. The district court granted summary judgment in favor of the child and her parents, and the court of appeals affirmed. The case is now before us on certiorari. We are asked to determine first, whether the child was negligent when she collided with the woman, and

second, whether the child's father negligently supervised the child.

¶2    As a matter of first impression, we hold that the applicable standard of care is simply that a person has a duty to exercise reasonable care while skiing. We conclude that under the circumstances here, the child was not negligent, and her father did not negligently supervise her. We affirm.

## BACKGROUND[1]

¶3    On a clear day in Park City on slopes of packed powder, Dwight Sutton took his family skiing at Park City Mountain Resort. Shortly before the resort closed for the day, the family took a final run on "First Time," "a green bunny hill for new skiers." Mr. Sutton's wife and youngest daughter skied to the bottom of the run, while Mr. Sutton remained with S.S., the couple's nine-year-old daughter. Mr. Sutton and S.S. (collectively, the Suttons) went down the run together, with Mr. Sutton skiing backwards so he could monitor S.S. They were moving slowly because S.S. was "fearful" and skiing cautiously, despite having had ski lessons the year before and "informal lessons" on the current trip.

¶4    S.S. was skiing in a "wedge," a common maneuver taught to beginner skiers to help them slow down, with the front tips of her skis together. She was traveling at approximately five miles per hour when she suddenly lost control and came out of the wedge. Although S.S. tried to "get back into" the wedge to slow down, she could not regain control and instead "just kind of straightened out." This caused her to accelerate past her father and collide with Stephanie Donovan. Ms. Donovan had stopped "just right of center" on the run to take a photograph of her husband and daughter. As Ms. Donovan was putting her camera away, she heard S.S. scream "look out!" But Ms. Donovan did not

---

[1] "In reviewing the evidence before the court on summary judgment, the 'facts and all reasonable inferences drawn therefrom [are viewed] in the light most favorable to the nonmoving party.'" *Nixon v. Clay*, 2019 UT 32, ¶ 34, 449 P.3d 11 (alteration in original) (citation omitted). We recite the facts accordingly and note that the parties agree that the material facts are undisputed.

have time to react, and S.S. crashed into her from behind. Ms. Donovan suffered injuries to her arm and shoulder.

¶5    Ms. Donovan sued S.S. for negligence and Mr. Sutton[2] for negligent supervision of his daughter.[3] Ms. Donovan alleged S.S. breached a duty of care because she "failed to pay attention to her speed, failed to maintain a proper lookout for other skiers, [and] skied out of control and beyond her abilities." And Ms. Donovan alleged Mr. Sutton breached his "duty and obligation to properly train and supervise [S.S.] . . . to avoid collisions with other skiers."

¶6    At the close of discovery, the Suttons moved for summary judgment. In their motion, the Suttons relied on the court of appeals' decision in *Ricci v. Schoultz*, in which the court held that a skier owes "a duty to other skiers to ski reasonably and within control," but "an inadvertent fall on a ski slope, alone, does not constitute a breach of this duty." 963 P.2d 784, 786 (Utah Ct. App. 1998). The Suttons argued that S.S. was skiing cautiously before she suddenly lost control and collided with Ms. Donovan, and she attempted to warn Ms. Donovan of the impending collision. The Suttons asserted that the collision was simply an accident that occurred absent any negligence on S.S.'s part. Further, recognizing that children in negligence actions are judged by a different standard of care than adults, the Suttons argued it was "not unreasonable for a 9-year-old beginner to be frightened, lose control, and fall, even under good ski conditions," and that S.S. was not "skiing unreasonably for her age or for the conditions."

¶7    As to the negligent supervision claim, the Suttons argued that Mr. Sutton's supervision of S.S. was "reasonable" because S.S. had professional lessons the year before, her parents "took [S.S.]

---

[2] Ms. Donovan also sued S.S.'s mother, but the district court granted summary judgment in the mother's favor and the court of appeals affirmed. *Donovan v. Sutton*, 2019 UT App 161, ¶ 32, 452 P.3d 1189. Ms. Donovan does not claim error on certiorari with respect to the claim against S.S.'s mother.

[3] Ms. Donovan also alleged S.S.'s parents were vicariously liable for S.S.'s negligence, but that claim was dismissed by the district court and is not at issue before us.

to the 'magic carpet' area of the mountain to warm up,"[4] she was skiing on a beginner run at the time of the collision, and she gave Mr. Sutton "no indication that she was tired, sore, or that she could not otherwise continue to ski." Additionally, the Suttons argued that S.S. was never unattended and that Mr. Sutton "had no reason to take more steps than he was taking to supervise" her.

¶8 Ms. Donovan opposed summary judgment, arguing that *Ricci* was not applicable in this case and that in any event, there was additional evidence of negligence beyond the fall itself. Ms. Donovan asserted that the evidence showed S.S. was "out of control"; "ignored instructions given by her father as to how to slow down"; and violated provisions of Park City Resort's Skier Responsibility Code, rules of conduct from the International Ski Federation, and Park City's Municipal Code. Ms. Donovan argued that S.S.'s breach of these guidelines amounted to negligence.

¶9 Ms. Donovan also argued that Mr. Sutton had negligently supervised S.S. because: he was aware that S.S. was not only inexperienced, but also "fearful of skiing"; it was the end of the day, so he should have known S.S. was getting tired and "skiing in a sloppy fashion"; his attempts to instruct S.S. were "feeble"; and he was skiing in close proximity to S.S., so he should have intervened to thwart the collision or warned Ms. Donovan of the imminent crash.

¶10 The district court granted summary judgment in favor of the Suttons. The court determined that "the only thing that the evidence showed . . . is that [S.S.] as a nine-year-old beginner skier, was not able to maintain her wedge . . . and then fell," which did not amount to a failure to use reasonable care under the *Ricci* standard. The court elaborated that S.S. "inadvertently" losing her wedge "caused her to start going faster, lean back and fall," and then collide with Ms. Donovan, which "simply do[es] not state a claim for negligence."

¶11 The district court also concluded that the undisputed facts failed to establish that Mr. Sutton negligently supervised his

---

[4] A magic carpet is a conveyor belt designed to move beginner skiers. Rita Wold, *Denver's Magic Carpet, Maker of Ski Lifts, Takes Off*, DENVER POST (May 5, 2016, 10:41 AM), https://www.denverpost.com/2010/10/03/denvers-magic-carpet-maker-of-ski-lifts-takes-off.

daughter. The court noted that S.S. took ski lessons the year before, Mr. Sutton gave her instructions about how to slow down, and that he "taught her to fall . . . if she felt like she was losing control." Further, the court said it was not "a reasonable inference that [Mr. Sutton] had some obligation to grab [S.S.,] and the facts [did not] really show that he had time to do that."

¶12 Ms. Donovan appealed, arguing the district court erred in (1) its interpretation of *Ricci*, *Donovan v. Sutton*, 2019 UT App 161, ¶ 14, 452 P.3d 1189, (2) ruling that there was no evidence that S.S. was skiing negligently other than the collision itself, *id.* ¶ 22, and (3) determining that the evidence did not establish negligent supervision, *id.* ¶ 27. The court of appeals affirmed, holding (1) *Ricci* applied to the case, *id.* ¶ 21; (2) no evidence existed to establish proof of negligence outside of the collision itself, *id.* ¶ 26; and (3) the record did not support a finding of negligent supervision, *id.* ¶ 31.

¶13 We granted Ms. Donovan's petition for certiorari. The question before us is whether the court of appeals erred in affirming the district court's grant of summary judgment on Ms. Donovan's negligence claim against S.S. and her negligent supervision claim against Mr. Sutton.

¶14 We exercise jurisdiction under Utah Code section 78A-3-102(3)(a).

## STANDARD OF REVIEW

¶15 "On certiorari, this court reviews the decision of the court of appeals for correctness, giving no deference to its conclusions of law." *State v. Marquina*, 2020 UT 66, ¶ 24, 478 P.3d 37 (citation omitted).

## ANALYSIS

¶16 Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." UTAH R. CIV. P. 56(a). In a negligence action, summary judgment is appropriate "only in the clearest [of] instances," although "[b]are allegations of negligence unsupported by facts . . . are insufficient to withstand a motion for summary judgment." *Dwiggins v. Morgan Jewelers*, 811 P.2d 182, 183 (Utah 1991). The parties agree there are no disputes of material fact here, although they disagree upon what inferences can be drawn from the undisputed facts.

## I. THE NEGLIGENCE CLAIM AGAINST S.S.

¶17   We first address Ms. Donovan's negligence claim against S.S. To maintain such a claim, the "plaintiff must establish that (1) defendant owed plaintiff a duty of care, (2) defendant breached that duty, and . . . (3) the breach was the proximate cause of (4) plaintiff's injuries or damages." *B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 5 n.2, 275 P.3d 228. We first articulate the standard of care owed by a skier to others in the vicinity and then explain that the undisputed facts do not establish S.S. breached that standard.

### A. The Applicable Standard of Care

¶18   S.S. does not dispute that while skiing, she owed a duty of care to those around her.[5] Ms. Donovan argues that the Park City Municipal Code creates the applicable duty of care here. The Code proscribes skiing or snowboarding "in a reckless or negligent manner so as to endanger the life, limb, or property of any person" and places the primary duty on the uphill skier or snowboarder "to avoid collision with any person or object below him." PARK CITY, UTAH, MUN. CODE § 8-2-8(B). A plaintiff asserting that a statute or ordinance establishes the applicable standard of care in a tort claim must demonstrate "that the *purpose* of the statute [or ordinance] was to protect a class of persons of which [the plaintiff in the case] is a member and to protect [such plaintiff] against injury or death resulting from the kind of harm

---

[5] The Suttons argue that our opinion in *Nixon v. Clay*, 2019 UT 32, 449 P.3d 11, fully disposes of this case. In *Nixon*, we held that "voluntary participants in a sport cannot be held liable for injuries arising out of any contact that is 'inherent' in the sport." *Id.* ¶ 21. In other words, "there is no duty to lower or eliminate risks that are inherent in an activity." *Id.* We decline to apply *Nixon* here. First, *Nixon* was issued after this case was submitted on oral argument to the court of appeals, so the Suttons did not have the opportunity to present this argument to the district court or the court of appeals. *Donovan v. Sutton*, 2019 UT App 161, ¶ 20 n.4, 452 P.3d 1189. Second, the arguments in the prior proceedings focused on whether Ms. Donovan had established that S.S. breached the applicable duty of care. But *Nixon*'s focus is whether a duty applies at all. 2019 UT 32, ¶¶ 10, 39. Because the parties neither briefed nor argued this point, we do not apply *Nixon* here.

contemplated by the legislature." *Colosimo v. Gateway Cmty. Church*, 2018 UT 26, ¶ 45, 424 P.3d 866 (alterations in original) (citations omitted) (internal quotation marks omitted). Further, a plaintiff must show that "the ordinance was *intended* to protect persons in the plaintiff's shoes from the type of harm that befell the plaintiff." *Id.*

¶19 But Ms. Donovan did not preserve this issue in the district court. And she inadequately briefed the issue in the court of appeals. Accordingly, we decline to address it here.

¶20 To preserve an issue for appeal, a party must give the district court an opportunity to rule on it. "To provide the court with this opportunity, the issue must be specifically raised [by the party asserting error], in a timely manner, and must be supported by evidence and relevant legal authority." *State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443 (alteration in original) (citations omitted) (internal quotation marks omitted). Although Ms. Donovan attempts to couch this as merely an argument within the overall issue of S.S.'s negligence, she is advancing a new legal theory (that Park City's ordinance imposes the applicable duty of care), so it must have been both preserved in the district court and adequately presented to the court of appeals. *See id.* ¶ 14 n.2 (explaining that new arguments such as "citing new authority or cases supporting an issue" need not be preserved but new legal theories, which amount to "entirely new issues," are subject to our preservation requirements).

¶21 Ms. Donovan did neither. In her brief in opposition to summary judgment in the district court, Ms. Donovan did not provide a legal basis for adopting the Park City ordinance as the applicable standard of care. She did quote the relevant section of the code in full (in addition to the ski resort's Skier Responsibility Code and rules from the International Ski Federation). And she stated that "[S.S.]'s failure to control her speed and failure to maintain control is a breach of these guidelines and standards applicable to skiing and hence she was negligent." But at no point did Ms. Donovan provide any analysis or identify any relevant legal authority, *e.g.*, *Colosimo*, 2018 UT 26, ¶ 45, in support of her assertion.

¶22 And we agree with the court of appeals that Ms. Donovan also inadequately briefed this issue in that court. *Donovan*, 2019 UT App 161, ¶ 25 (noting "Donovan only cursorily grapples with th[e] 'preliminary question of whether the legislative standard imposes a duty recognizable in tort,'" and

determining she failed to meet "her burden of persuasion on this subject" (citation omitted)).

¶23 Accordingly, we reject Ms. Donovan's invitation to use the Park City ordinance as the applicable standard of care. To be clear, we do not foreclose a future argument that a local ordinance or statute imposes a duty of care on skiers. We simply do not reach the argument here, because it was not properly preserved.

¶24 The district court and the court of appeals concluded that a court of appeals case, *Ricci v. Schoultz*, 963 P.2d 784 (Utah Ct. App. 1998), established the applicable standard of care here. In *Ricci*, Schoultz, a downhill skier, unexpectedly lost control and collided with Ricci, an uphill skier. *Id.* at 785. Ricci was injured and sued Schoultz for negligence, arguing "that since Schoultz's fall took place on one of the easiest runs . . . under near perfect conditions, there was no possible reason for Schoultz to have fallen except for his own negligence." *Id.* Despite the jury finding for Ricci, the district court entered judgment notwithstanding the verdict. *Id.* On appeal, the court of appeals affirmed and held that a skier has "a duty to other skiers to ski reasonably and within control," but that "an inadvertent fall on a ski slope, alone, does not constitute a breach of this duty." *Id.* at 786. Because "Ricci failed to introduce any competent evidence that Schoultz was skiing negligently before his sudden and unexpected fall," the court determined the claim failed. *Id.*

¶25 We have not previously articulated the standard of care for skiers. We hold today that the applicable standard of care is a somewhat streamlined version of the one articulated by the court of appeals in *Ricci*: it is simply that a person has a duty to exercise reasonable care while skiing.

¶26 Here, the skier was a nine-year-old child. When a child is accused of negligence, the standard of care is measured by "that degree of care which ordinarily would be observed by children of the same age, intelligence and experience under similar circumstances." *Donohue v. Rolando*, 400 P.2d 12, 14 (Utah 1965) (citation omitted).

¶27 Accordingly, S.S. had a duty to exercise reasonable care while she was skiing. The standard of care required of her is measured by the degree of care that ordinarily would be observed by a nine-year-old child of the same intelligence and experience

under similar circumstances. There is no evidence in the record concerning S.S.'s intelligence, so we do not consider this factor.[6] Otherwise, the record shows that S.S. was a beginner skier who had taken a professional ski lesson the year before and was being informally instructed by her father on a beginner ski run in normal conditions.

### B. Breach of the Duty of Care

¶28   Once the applicable duty of care has been established, the inquiry moves to whether the defendant breached that duty. Breach of duty is "determined on a case-specific basis," *Jeffs*, 2012 UT 11, ¶ 25, generally by the fact finder. And summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." UTAH R. CIV. P. 56(a). The court of appeals affirmed the district court's grant of summary judgment, concluding that this is a case "in which no reasonable jury could find S.S. negligent," *Donovan*, 2019 UT App 161, ¶ 9 n.3, even when viewing the undisputed facts in the light most favorable to Ms. Donovan as the nonmoving party, *id.* ¶ 26.

¶29   We agree with the court of appeals that the undisputed facts here simply do not establish that S.S. breached her duty to ski with reasonable care. Those facts are that S.S., a nine-year-old beginner skier, was skiing slowly in a wedge on a green run for beginner skiers. She inadvertently lost control, and her legs came out of the wedge position. S.S. tried to "get back into the wedge," but she was unable to do so. Instead, she "just kind of straightened out," which caused her to accelerate down the mountain. Ms. Donovan had stopped on the run, just right of center, to take photos. When S.S. saw Ms. Donovan, she shouted a warning. But Ms. Donovan did not have enough time to get out of the way. S.S. collided into Ms. Donovan from behind, and Ms. Donovan was injured.

---

[6] We have said, in considering the contributory negligence of a child under fourteen, that "the question hinges on a number of factors such as age, intelligence, experience, and education of the child, which cannot be determined in a vacuum, *but must be related to the child itself*." *Carr v. Bradshaw Chevrolet Co.*, 464 P.2d 580, 581 (Utah 1970) (emphasis added). Thus, the significance of each factor will vary from case to case and child to child.

¶30 Ms. Donovan argues that she has demonstrated a breach of duty because, despite S.S.'s formal and informal ski lessons, "S.S. did not attempt to draw upon th[at] experience in a timely manner, even where the circumstances permitted her to do so." (Emphasis omitted.) But these are merely conclusory assertions, not reasonable inferences. S.S. was skiing cautiously at a slow speed, under the supervision of her father on a beginner run, when she inadvertently lost control. Ms. Donovan has not identified any conduct by S.S. that departed from her duty to ski reasonably, other than the fact of her loss of control itself. This is insufficient.

¶31 To be clear, we do not establish a categorical rule that an inadvertent fall, by itself, can never establish negligence. And we overturn *Ricci* to the extent that it established such a rule. *See Ricci*, 963 P.2d at 786–87. While it is difficult to imagine the factual scenario, we leave open such a possibility. But Ms. Donovan has not produced evidence that is sufficient to place negligence in dispute here. The court of appeals correctly affirmed the district court's grant of summary judgment on this claim.

## II. THE NEGLIGENT SUPERVISION CLAIM AGAINST MR. SUTTON

¶32 We now turn to Ms. Donovan's negligent supervision claim against Mr. Sutton. At both parties' request, the court of appeals applied the standard for negligent supervision articulated in section 316 of the Second Restatement of Torts, although it stopped short of adopting the Restatement standard. *See Donovan v. Sutton*, 2019 UT App 161, ¶¶ 29, 31, 452 P.3d 1189. And it affirmed the district court's grant of summary judgment on Ms. Donovan's negligent supervision claim. *Id.* ¶ 32.

¶33 We have yet to articulate a standard for claims of negligent supervision, and Ms. Donovan urges us to adopt section 316. But she has not carried her burden of persuading us that section 316 applies here even if we decided to adopt it. So we do not resolve whether to adopt section 316 in this case, and we affirm the court of appeals' rejection of Ms. Donovan's negligent supervision claim.

¶34 In general, parents are not liable for the torts of their children. *See* 59 AM. JUR. 2D *Parent & Child* § 88 (2021) ("At common law, the mere fact of paternity or maternity does not make a parent liable for the torts of his or her minor child."). But the Restatement recognizes a distinct tort of negligent parental supervision, in which a parent's failure to adequately supervise

and control a child can lead to liability for the parent. *See, e.g.,* *Keener v. Hribal*, 351 F. Supp. 3d 956, 965 (W.D. Pa. 2018) (explaining that liability is imposed "where negligence on the part of the parents makes the injury possible" (citation omitted)). Under section 316,

> A parent is under a duty to exercise reasonable care so to control his [or her] minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
>
> (a) knows or has reason to know that he [or she] has the ability to control his [or her] child, and
>
> (b) knows or should know of the necessity and opportunity for exercising such control.

RESTATEMENT (SECOND) OF TORTS § 316 (AM. L. INST. 1965).

¶35  Ms. Donovan asserts that Mr. Sutton was negligent in his supervision of S.S. on the ski slope because he (1) knew S.S. was tired yet kept her on the ski run and even encouraged her to speed up; (2) knew S.S., as a beginner skier, was fearful and prone to falling; and (3) was skiing backward, watching S.S., instead of watching out for downhill skiers.

¶36 But under section 316, before we consider what Mr. Sutton knew or should have known, Ms. Donovan must show that S.S. either intentionally harmed another or conducted herself in a way that created "an *unreasonable* risk of bodily harm" to another. *Id.* (emphasis added). Ms. Donovan does not claim that S.S. intentionally collided with her. So Ms. Donovan bears the burden of showing that a reasonable jury could conclude that a child who accidentally fell while learning to ski on a beginner ski slope was conducting herself in a manner that posed "an unreasonable risk of bodily harm" to others. *Id.*

¶37 Ms. Donovan has not met this burden. She has not provided us with any analysis or argument as to what "unreasonable risk of bodily harm" means or why S.S.'s behavior falls within it. And we did not find—nor did Ms. Donovan point us to—any case in which section 316 was invoked after a child accidentally injured a third party while under the tutelage of her parent. To the contrary, most cases in which section 316 has been applied involve egregious behavior. *See, e.g., Dinsmore-Poff v. Alvord*, 972 P.2d 978 (Alaska 1999) (seventeen-year-old shot and killed two people); *Blitz v. Lovejoy*, 2016 WL 7975766 (Conn. Super.

Ct. Dec. 13, 2016) (child set fire to private property); *Nielsen v. Spencer*, 704 N.W.2d 390 (Wis. Ct. App. 2005) (teenager hit another teenager over the head with a metal rod); *Sinsel v. Olsen*, 777 N.W.2d 54 (Neb. 2009) (teenager threw fireworks at a group of people); *Gritzner v. Michael R.*, 611 N.W.2d 906 (Wis. 2000) (child sexually abused another child); *Nieuwendorp v. Am. Fam. Ins. Co.*, 529 N.W.2d 594 (Wis. 1995) (child pulled a teacher's hair, causing a herniated disc).

¶38 Instead, Ms. Donovan sidesteps Mr. Sutton's argument that he cannot be liable for negligent supervision because S.S. engaged in no conduct creating an unreasonable risk of bodily harm for him to prevent. Ms. Donovan responds that "[a] parent's duty . . . does not spring into existence only when a child poses an unreasonable risk." Rather, Ms. Donovan argues, section 316 "runs ahead of this eventuality, obligating the parent 'to exercise reasonable care so to control his minor child to *prevent*'" the child from intentionally causing harm or creating an unreasonable risk of bodily harm to others. (Citation omitted.)

¶39 But Ms. Donovan's response does not dispose of Mr. Sutton's argument. Before a parent can be liable for negligently supervising a child under section 316, the child must have engaged in some sort of intentionally harmful conduct or conduct creating an unreasonable risk of bodily injury that the parent failed to prevent. And Ms. Donovan has made no legal argument as to why S.S.'s behavior created an "unreasonable risk of bodily harm" as contemplated by section 316.

¶40 Accordingly, in asking us to adopt section 316, Ms. Donovan has not carried her burden of showing that the conduct here even implicates the tort established in that section. We thus need not consider whether to adopt section 316, as Ms. Donovan has failed to show that the section's articulation of the tort of negligent supervision would be applicable in this case even if we were to do so.

**CONCLUSION**

¶41 We hold that a person has a duty to exercise reasonable care while skiing. And a nine-year-old beginner skier on a beginner ski run is held to the standard of care commensurate with children of the same age, experience, and intelligence under similar circumstances. Here, Ms. Donovan failed to establish a dispute of fact as to whether S.S. breached her duty to exercise reasonable care while she skied down "First Time." Further, Ms. Donovan has failed to persuade us that the facts here implicate

section 316 of the Second Restatement of Torts, even if we were to adopt it. So we leave that question for another day.

¶42   We affirm.

————————